## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JERSON DIAZ** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **KEVIN PISTRO, Warden and JOHN** | : | |
| **DOE, Health Service Administrator** | : | **NO. 21-2909** |

## <u>MEMORANDUM</u>

**Savage, J.**                                                                                                              **August 5, 2021**

Jerson Diaz, a pretrial detainee currently incarcerated at FDC-Philadelphia ("FDC"), filed this *pro se Bivens* action[1] against defendants Kevin Pistro, the Warden of FDC, and John Doe, the Health Service Administrator at FDC. Diaz seeks to proceed *in forma pauperis*. After reviewing Diaz's filings, we shall grant his application to proceed *in forma pauperis* and dismiss the Complaint without prejudice.[2]

### Factual Allegations

Diaz alleges that while he was detained at FDC during the COVID-19 pandemic, he was fed only peanut butter and jelly while the facility was on lockdown.[3] He alleges that after he began experiencing coronavirus disease symptoms in October 2020, he

---

[1] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971). "[A]ctions brought directly under the Constitution against federal officials have become known as '*Bivens* actions.'" *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

[2] On July 27, 2021, the Clerk of Court docketed as an "Amended Complaint" an almost entirely blank and unsigned version of the Court's form complaint. It is unclear why Diaz submitted the paper. The only substantive statement in it is "Denied any other medical treatment." Because the pleading is unsigned, adds no substantive factual averment, and does not appear that Diaz intended the pleading to serve as a superseding amended complaint, we will disregard it and order the Clerk to correct docket no. 6 to reflect that the filing is a notice and not an amended complaint.

[3] Compl. at 2 (Doc. No. 1).

made several sick call requests to medical staff.[4]  He was not seen by medical personnel until November 2020.[5]  He claims he suffered high fever, loss of breath, diarrhea, dizziness, headaches, hot and cold sweats, and loss of strength.[6]  He received only Tylenol for his symptoms.[7]  Diaz asserts that Defendants Pistro and John Doe Health Service Administrator "were both aware of the outbreak but did nothing within their power to prevent inmates from contracting COVIC-19."[8]  Diaz seeks money damages.

## Standard of Review

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), we must dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "[M]ere conclusory statements do not suffice."  *Id.*

Because Diaz is proceeding *pro se*, we construe his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

---

[4] *Id.* at 3.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.* at 2.

**Discussion**

*Medical Deliberate Indifference Claims*

A prisoner may bring a *Bivens* claim against federal prison officials based on an allegation of deliberate indifference to a serious medical need. *Carlson v. Green*, 446 U.S. 14 (1980). For purposes of the Eighth Amendment, courts have held that a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

For purposes of this analysis, we assume that the COVID-19 symptoms Diaz describes constitute serious medical needs. Nonetheless, he has not alleged a plausible *Bivens*-based medical deliberate indifference claim.

To be plausible, a *Bivens*-based claim must allege personal involvement by the named defendant. *See Pressley v. Beard*, 266 Fed. App'x 216, 218 (3d Cir. 2008) (finding that the district court properly dismissed prison officials who were sued "based on their failure to take corrective action when grievances or investigations were referred to them"); *Jackson v. Grondolsky*, Civ. A. No. 09-5617, 2011 WL 13704 at *1 n. 1 (D.N.J. Jan. 3, 2011) (surveying applicable Third Circuit precedent regarding supervisory liability in the prisoner medical treatment context and holding that no cause of action would lie where the only allegation supporting the claim was that the warden failed to take action after being presented with plaintiff's administrative grievances); *Garvey v. Martinez*, Civ. A. No. 08-2217, 2010 WL 569852 at *7 (M.D. Pa. Feb. 11, 2010) (rejecting prisoner's *Bivens* deliberate indifference claim against defendant prison warden where the warden was not personally involved in decisions regarding plaintiff's medical care) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)).

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). Liability under § 1983 and *Bivens* is personal in nature and attaches only where the defendant's personal involvement in the alleged wrongful conduct is shown through specific allegations of personal direction or

4

actual knowledge and acquiescence. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). However,

> A government official can be held liable for acts of a subordinate in two ways. First, "personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Supervisory liability can be established "by showing a supervisor tolerated past or ongoing misbehavior." To plead acquiescence, "the supervisor must contemporaneously know of the violation of a plaintiff's rights and fail to take action." "Allegations of 'actual knowledge and acquiescence . . . must be made with appropriate particularity.'" And "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."
>
> "Second, a supervisor can be liable under § 1983 [and *Bivens*] if he 'implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct.'"

*Acosta v. Democratic City Committee*, 288 F. Supp. 3d 597, 636-37 (E.D. Pa. 2018) (internal citations omitted).

A complaint alleging supervisory liability based on policy and practice "'must [first] identify a supervisory policy or practice that the supervisor failed to employ.'" *Mark v. Patton*, 696 F. App'x 579, 582 (3d Cir. 2017) (citations omitted). Then, the plaintiff must allege that:

> (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

5

*Id.* (citation omitted).

The sole allegation regarding the defendants is that they were aware of the outbreak of COVID-19 in FDC but did nothing to prevent inmates from contracting the disease. This allegation fails to address how the defendants were deliberately indifferent. Diaz does not assert that either defendant intentionally refused, delayed, or prevented him from receiving medical treatment, or was even personally aware of his need for medical treatment. He does not allege that either defendant personally directed or had actual knowledge of the actions of subordinates, tolerated past or ongoing misbehavior, or acquiesced in the actions of subordinates. Finally, Diaz does not allege that either defendant implemented a policy or practice that created an unreasonable risk of a constitutional violation on the part of the subordinate or that the supervisor's failure to change the policy or employ corrective practices was a cause of this unconstitutional conduct. Accordingly, the claim must be dismissed.

The dismissal will be without prejudice and Diaz will be granted leave to file an amended complaint to attempt to cure the defects in his claim if he is able to identify a person who intentionally refused, delayed, or prevented him from receiving medical treatment, or a plausible basis for supervisor liability.[9]

---

[9] To the extent that Diaz alleges the defendants were aware of the outbreak of COVID-19 in FDC but did nothing to prevent inmates from contracting the disease, such a claim is also implausible. Assuming, without deciding, that a *Bivens* remedy is available for this type of non-medical claim, the Complaint fails to state a claim as pled. Diaz alleges that he contracted COVID-19 while incarcerated. He does not allege any facts from which it could be inferred that the conditions in which he was confined were constitutionally deficient. His diagnosis alone is an insufficient basis upon which to establish a constitutional violation. *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (explaining that the constitution does not require the government to entirely eliminate the risk of contracting COVID-19 in a prison setting, stating "[plaintiffs] argue that the Government must eliminate *entirely* their risk of contracting COVID-19.

6

*Claims Based on Food Services*

To the extent Diaz intends to assert a separate claim based on his being fed only peanut butter and jelly while the facility was on lockdown, any such claim is implausible. First, Diaz fails to assert how that diet violated his constitutional rights in a manner that could be addressed in a *Bivens* claim. *See Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017) (stating that since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses" and a "rigorous inquiry . . . must be undertaken before implying a *Bivens* cause of action in a new context or against a new category of defendants."); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (holding that expanding *Bivens* as a cause of action is "a 'disfavored' judicial activity"); *see also Mammana v. Barben*, No. 20-2364, 2021 WL 2026847 at *2 (3d Cir. May 21, 2021) ("while *Bivens* claims are disfavored, they do not automatically fail").

Even if the institution's limited food service can be the basis of a *Bivens* claim, Diaz fails to allege how either named defendant was personally involved in the decision to provide him a limited diet during the pandemic-related lockdown of FDC. Like his medical deliberate indifference claim, Diaz fails to allege that either defendant was personally involved in determining a limited diet, or that they may be held liable based on the actions of subordinates.

---

That task is not the constitutional standard, however.").

7

In order to state a plausible constitutional violation based on his limited diet, the meals would have to amount to punishment. Pretrial detainees in federal custody are protected from "punishment" by the Due Process Clause of the Fifth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Unconstitutional punishment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n. 20). In general, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Seiter*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Diaz's allegation about his limited diet during the COVID lockdown of FDC is insufficient to satisfy either the objective or subjective components of a due process claim. A constitutionally adequate diet "must provide adequate nutrition, but corrections officials may not be held liable [as to claims of inadequate food] unless the inmate shows both an

8

objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind)." *Duran v. Merline*, 923 F. Supp. 2d 702, 719-20 (D.N.J. 2013) (citing *Stevenson*, 495 F.3d at 68 (3d Cir. 2007) and *Seiter*, 501 U.S. at 298)). Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation." *Id.* at 720 (citing *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)). Courts have held that inmates must be served "'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well-being." *Id.* (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramons v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)); *Mora v. Camden Cty.*, Civ. A. No. 09-4183, 2010 WL 2560680, at *8 (D.N.J. June 21, 2010)).

Diaz's allegation does not satisfy the objective requirement. *See Duran*, 923 F. Supp.2d at 720 ("Being served cold meals . . . is not 'punishment' under *Bell*. So long as the food is nutritionally adequate, the mere fact that it is unvaried or cold does not give rise to a constitutional violation . . ."). He does not allege he was malnourished or that he became ill due to systemic problems with inadequate or unvaried food.

Diaz also has failed to allege the subjective component of the *Stevenson* test. The test for deliberate indifference is "subjective recklessness" as that concept is understood in criminal law. *See Farmer*, 511 U.S. at 839-40. He has not pleaded any facts from which one could reasonably infer deliberate indifference by anyone at FDC with respect to food variety or to the minimum requirements of providing a non-harmful diet based on the event he describes. Without any allegation sufficient to demonstrate

9

substantial nutritional deprivation on a recurring basis or subjective recklessness, Diaz's claim is implausible.